No. 2701

Second Circuit

RISER v. BREAZEALE

(November 6, 1926. Opinion and Decree.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court on a matter of fact, that a sawmill had been sold and was owned by the vendee at the time of an accident, being clearly correct, is affirmed.

2. **Louisiana Digest—New Trial—Par. 2, 31.**

Motion for a new trial will be overruled where it appears that the newly discovered evidence would be merely cumulative.

Appeal from the Tenth Judicial District Court of Louisiana, Parish of Natchitoches. Hon. John F. Stephens, Judge.

Action by Mrs. Ola Riser against Dr. E. W. Breazeale, et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

J. W. Jones, Jr., of Natchitoches, attorney for plaintiff, appellant.

Breazeale & Breazeale, of Natchitoches, attorneys for Dr. W. W. Breazeale, defendant, appellee.

WEBB, J. The plaintiff, Mrs. Ola Riser, widow of Clarence Riser, brings this action against Dr. E. W. Breazeale and O. F. Shagun, alleged to have composed the firm of O. F. Shagun Lumber Company, to recover compensation for herself and children under Paragraph (c), Subsection 2 of Section 8 of the Employers' Liability Act, for the death of her husband, alleged to have resulted from injuries received by her husband while in the employ of the said lumber company.

The defendant, E. W. Breazeale, answered, denying the allegations of plaintiff's petition, and no default or rule having been taken against O. F. Shagun, trial was had as against E. W. Breazeale, and judgment rendered rejecting plaintiff's demands.

Plaintiff moved for a new trial on the ground that the judgment was contrary to the law and the evidence, and upon the ground that she had discovered important evidence subsequent to the trial, which motion was overruled, and plaintiff appealed.

OPINION

The plaintiff contends here that the judgment should be reversed and judgment

rendered in her favor as prayed for, and if this court does not find that the evidence warrants such action, that the judgment should be annulled and the cause remanded for a new trial.

Considering these contentions in their order, we find that the evidence establishes that Dr. E. W. Breazeale purchased a sawmill, which was located near Coushatta, from J. A. Liendecker, and that Liendecker retained a chattel mortgage on the machinery to secure twelve hundred and fifty dollars, a part of the purchase price; that Breazeale moved the mill to a point near Campti, where it was set up and operated by E. W. Breazeale and C. C. Beard, and, their operations being successful, Beard withdrew and Breazeale entered into an agreement with W. W. Lejeune and C. K. Brunson to operate the mill under the name of the Breazeale Lumber Company, Limited, and this copartnership being unsuccessful the mill was turned over to O. F. Shagun.

The question of fact in dispute is whether or not O. F. Shagun was operating the mill at the time Riser was injured for the benefit of himself, or whether it was being operated for the benefit of E. W. Breazeale.

E. W. Breazeale testified that the mill had been sold by him to Shagun on November 27, 1924, prior to the date of the accident, which occurred on March 16, 1925; that Shagun was to pay seventeen hundred dollars for the mill, of which amount two hundred dollars was paid in cash and applied by Breazeale on the mortgage retained by Liendecker.

Shagun, on the other hand, testified, as near as we can gather from his statements, that the agreement was that the mill was turned over to him to be operated by him for the benefit of Breazeale, Bakel and himself, O. F. Shagun, under the partnership name of O. F. Shagun Lumber Company, and that he was operating the mill for the benefit of the partnership at the time Clarence Riser was killed.

Mr. Bakel (one of the partners, as claimed by Shagun) and Mr. Riser were killed at the same time, and the parties, in the conflict between the testimony of E. W. Breazeale and Shagun, introduced evidence to support their respective witnesses.

The evidence establishes that the mill was turned over to Shagun on November 27, 1924, the date on which E. W. Breazeale testified that he had sold the mill to Shagun, and that on that date Shagun delivered to Breazeale a check for two hundred dollars; that at the time Breazeale claims to have sold the mill to Shagun the chattel mortgage in favor of Liendecker was unpaid, and Liendecker testifies that the agreement between Breazeale and Mr. Shagun was made in his presence and that he agreed to allow Mr. Shagun to pay off the mortgage but he did not agree to release Breazeale.

The evidence further establishes that, while the mill was being operated for the partnership, Breazeale Lumber Company, Limited, composed of Breazeale, Lejeune and Brunson, that there were teams belonging to the partnership which came into the possession of Breazeale, and that these teams were not turned over to Shagun at the time the mill was delivered to him, but that the teams were sold by Breazeale to other parties.

The evidence further establishes that Mr. Shagun told the employees that Mr. Breazeale was not interested in the mill.

The evidence further establishes that, after the mill was delivered to Shagun, he

tried to sell some of the machinery to the holder of the chattel mortgage.

Mr. Shagun denied that he had entered into any agreement with Breazeale in the presence of Liendecker, and he explains the check of two hundred dollars with the statement that it was given as a payment for an undivided one-third interest in the mill, and that he tried to stop payment on the check when he learned that Liendecker would not release the machinery.

Mr. Shagun states that the reason why he had told the employees that Dr. Breazeale was not interested was because the employees did not want to work for Dr. Breazeale, and he also says, in explanation of his offer to sell Liendecker, the holder of the chattel mortgage, some of the machinery, that he expected to get the cash from the sale.

In support of the testimony of Mr. Shagun as to the transaction by which Shagun came into possession of the mill, evidence was offered tending to show that Dr. Breazeale had visited the mill plant on many occasions after it was delivered to Mr. Shagun, that he had drawn several drafts for the O. F. Shagun Lumber Company and had otherwise attended to financial matters in which the Shagun Lumber Company was interested during the time the mill was operated by Mr. Shagun; that Dr. Breazeale had purchased feed for teams, presumably belonging to the lumber company, on the orders of Mr. Shagun, and that some timber had been cut from lands belonging to Dr. Breazeale by the Shagun Lumber Company, and that, after the accident (boiler explosion), Dr. Breazeale had been interested in obtaining another boiler, and, that on the mill being abandoned, which was very soon after the explosion, Dr. Breazeale drew drafts in the

name of the Shagun Lumber Company on parties to whom lumber, etc., had been sold by Shagun, and that Breazeale had hauled some of the lumber from the mill after the date of the explosion.

The evidence establishes that Dr. Breazeale had turned in for the tax assessor an assessment sheet for the year 1925, showing for assessment to the Breazeale-Beard Lumber Company a sawmill valued at one thousand dollars, which we assume was the mill which was being operated by Mr. Shagun under the name of the O. F. Shagun Lumber Company.

Dr. Breazeale testified that he had not visited the mill on many occasions since it was delivered to Mr. Shagun, and it appears from the testimony of Mr. Shagun that he called upon Dr. Breazeale to assist him in attending to the financial matters connected with the mill, such as drawing drafts, etc., and Dr. Breazeale testified that if any timber was cut from his lands by the Shagun Lumber Company he had no knowledge of it, and that he had some correspondence with parties relative to purchasing a boiler, which was at the request of Mr. Shagun, and it is shown that all sales of lumber, etc., or removal of lumber after the explosion was made with knowledge of Mr. Shagun, who, after the explosion, turned the property back to Breazeale.

Dr. Breazeale being on a note for some nine hundred dollars secured by a chattel mortgage on the machinery, was very materially interested in the success of the operations carried on by Shagun, and aside from the fact that Mr. Shagun requested him to attend to many matters connected with the finances of the mill, we are of the opinion that the evidence which could indicate any interest on the part of Dr. Breazeale is explained by the fact of his

being responsible for the note, and from our consideration of the evidence we do not find anything which goes to contradict the testimony of Dr. Breazeale, except the testimony of Mr. Shagun and the fact that Dr. Breazeale gave in the property for assessment under the name of Breazeale-Beard Lumber Company.

The testimony of Mr. Shagun is very indefinite, and conflicting with itself, while that of Dr. Breazeale is supported by the direct testimony of Liendecker and by the fact that Mr. Shagun admits having given Dr. Breazeale a check for two hundred dollars, and by the fact of Mr. Shagun having attempted to sell some of the machinery, and while the circumstance of Dr. Breazeale having given in the property for assessment under the name of Breazeale-Beard Lumber Company cannot be ignored, we do not think that it can possibly be held to have overcome the testimony of Dr. Breazeale and Mr. Liendecker, and we find that the court correctly weighed the evidence and rejected the plaintiff's demands.

## MOTION FOR NEW TRIAL

The motion is based upon the allegations of newly discovered evidence, it being alleged that plaintiff can show by Mr. Shagun and others, acts of Dr. Breazeale establishing his interest in the affairs of the Shagun Lumber Company, such as showing that Dr. Breazeale received orders for lumber and delivered same to Mr. Shagun, and that Breazeale obtained bills of lading for shipments, with draft attached, drawn by Breazeale, and that she has, since the trial, obtained possession of drafts drawn by the Breazeale-Shagun Lumber Company and O. F. Shagun Lumber Company, by E. W. Breazeale, and that she has obtained the evidence of a person who accompanied E. W. Breazeale and O. F. Shagun to Coushatta on the date when the question of the indebtedness of Dr. Breazeale was under discussion, and by whom she can prove that no purchase or sale of the sawmill by Dr. Breazeale was mentioned, and that she can prove that Dr. Breazeale had permitted the liability insurance carried to lapse some time before the alleged sale to Shagun.

We are of the opinion that, conceding that the evidence tending to show that Dr. Breazeale manifested an interest in the operation of the mill is cumulative, and it could be fully explained by the fact that Dr. Breazeale was very much interested in the successful operation of the mill by Shagun, as it appears that Mr. Shagun had no property or other means by which he could pay the purchase price of the mill and relieve Dr. Breazeale of his obligation to Mr. Liendecker, and by the fact that Mr. Shagun had called upon Dr. Breazeale to assist him in such matters.

As to the evidence of the witness who is alleged to have accompanied Dr. Breazeale and Mr. Shagun when they called upon Mr. Liendecker, we are of the opinion that this evidence would also be merely cumulative and also in conflict with some of the statements of Mr. Shagun (Ev. 182).

There was on the original trial some testimony as to Dr. Breazeale's having cancelled an insurance policy when he delivered the mill to Shagun, which it was claimed supported the theory of the defense that Breazeale had sold the mill to Shagun, but as we did not consider this evidence for the reason that the date of the cancellation was not shown with certainty, we do not think that the evidence offered by plaintiff in the motion could have any effect.

For the reasons assigned the judgment appealed from is affirmed.